The People *ex rel.* Bendon agt. The County Judge of Rensselaer.

---

## SUPREME COURT.

THE PEOPLE, &c., on the relation of EUGENE BENDON agt. THE COUNTY JUDGE OF RENSSELAER.

The *appellate jurisdiction* of the *county court*, embraces all judgments rendered by a justice's court in *civil actions.* What is an *action ?*

Within the definition of the Code, " an action is an ordinary proceeding in a court of justice, by which a party prosecutes another party, for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offence."

Although this definition is not remarkable for perspicuity or distinctness, it es-

The People *ex rel.* Bendon agt. The County Judge of Rensselaer.

sentially includes any judicial proceeding, which, if conducted to a termina-
tion, will result in *a judgment.*

Hence the definition of a *"judgment,"* as given in the 245th section of the
Code is, that it is the final determination of the rights of the parties *in an
action.*

Therefore, a *judgment* of a justices' court, in proceedings instituted under and
in pursuance of the provisions of the *mechanics' lien law* (in the statutes) is
a judgment in a civil action, and is the subject of review on *appeal* to the
*county court,* the same as other judgments.

*Albany, Special Term, Aug.,* 1854.

MOTION for mandamus.

On the 18th of January, 1854, the justices' court of the city
of Troy rendered two judgments against the relator, one for
$53.67, in favor of Horace Chappill, and the other for $38.69,
in favor of Charles H. Cutting. Each of these judgments was
rendered in pursuance of the provisions of the mechanics' lien
law. (*See Sess. Laws of* 1852, *p.* 611; *id.* 1853, *p.* 809.)

The claim of the plaintiff, in each suit, was for work and
labor done for one Jackson, upon a house which Jackson was
building for the relator, under a contract. The plaintiffs sev-
erally served upon the relator a specification of their claims,
and notice to appear before the justices' court at a time and
place specified, according to the provisions of the act. Pur-
suant to the notice, the parties appeared, and the relator put in
his answer, and issue was joined. Upon the trial of these
issues, judgments were rendered as above stated.

From these judgments the relator, in due form, appealed to
the Rensselaer county court. Returns were made to the ap-
peals, and the causes were noticed for argument and placed
upon the calendar.

When the causes were moved for argument, the counsel for
the plaintiffs in the judgments objected that the court had no
jurisdiction to review a judgment rendered under the provisions
of the act above mentioned. The county judge so held, and
refused to hear the causes argued upon the appeals, and made
an order that the same be dismissed. Upon these facts, the
relator moved for a mandamus, requiring the county judge to
vacate the orders dismissing the appeals, and to proceed to

hear and determine the same, in the same manner and with the like effect as other appeals from justices' courts are heard and decided.

> G. VAN SANTVOORD, *for relator.*
> JOB S. OLIN, *for defendant.*

HARRIS, Justice.    By the *second* subdivision of the 30th section of the Code, exclusive power is conferred on the county court to review, in the first instance, judgments rendered by a justice's court in *civil actions.*    The 351st section of the Code repeals all statutes then in force, providing for the review of judgments in *civil cases* rendered by justices' courts, and de-clares that, thereafter, the only mode of reviewing *such* judg-ments shall be an appeal as prescribed in that chapter.    The appellate jurisdiction of the county court, therefore, embraces all judgments rendered by a justice's court in civil actions, or, as they are called in the 351st section of the Code, "civil cases."

The question now to be decided is, whether the judgments which the relator seeks to have reviewed, are judgments in civil actions or cases, within the meaning of the statute.

Various attempts have been made to define an action.    The last, of which I am aware, is that made in framing the Code. Its definition, as now amended, is, that it is an ordinary pro-ceeding in a court of justice, by which one party prosecutes another for the enforcement of a right, &c.    It must be con-ceded, I think, that this definition is not remarkable for its per-spicuity or distinctness.    I suppose, myself, that any judicial proceeding which, if conducted to a termination, will result in *a judgment,* is an action.    Hence the definition of a judgment, as given in the 245th section of the Code, is, that it is the final determination of the rights of the parties *in an action.*

There are various modes of commencing an action.    In courts of record, since the adoption of the Code, it must be by summons, served upon the party in some one of the modes pre-scribed, or by voluntary appearance, which is regarded as equivalent to a personal service.    Other modes have been, and

The People *ex rel.* Bendon agt. The County Judge of Rensselaer.

may be prescribed in particular cases. In justices' courts it may be commenced by summons, warrant, or attachment, or in whatever mode the legislature may prescribe. The character and effect of the judgment may differ, according to the mode in which the action is commenced; but if the proceeding result in a judgment, it is an action.

Applying this test to the adjudications in question, there can be no doubt that they are *judgments in civil actions*. It is true, the proceedings were instituted by the service of what the statute calls a notice, requiring the defendant to appear, &c. But whether the defendant appear according to the exigency of this notice or not, the court proceeds to dispose of the case, as it does other cases after due service of process. If the defendant does not appear, judgment upon default is rendered against him, as in other cases. If he does appear, issue is to be joined, and then the parties proceed to trial and judgment in all respects as in other cases.

This view of the question is strongly supported by the uniform practice of other courts, in kindred cases arising under similar statutes. The act under which the proceedings in question were had is, substantially, a copy of the New-York lien law of 1851. (*Sess. Laws,* 1851, *p.* 953.)

Appeals have frequently been brought from the judgments of the marine court and justices' courts in New-York, in proceedings instituted under this law, to the New-York common pleas, and have always been entertained. The fact that no objection appears to have been made to the right of the court to review these judgments, should not impair the value of the precedent. (*See Sullivan* agt. *Brewster,* 8 *How.* 207; *Cronk* agt. *Whitaker,* 1 *E. D. Smith,* 647; *M'Bride* agt. *Crawford, id.* 658; *Cronkright* agt. *Thomson, id.* 661; *Hauptman* agt. *Halsey, id.* 668—*and many other cases under same law reported in same volume.*)

I am of opinion that the county judge erred in refusing to entertain the appeals for want of jurisdiction, and that he ought to be required to reinstate the appeals, and hear and decide them. The motion is, therefore, granted.